UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In the Matter of the Arbitration between

REALSHARE INTERNATIONAL, INC.,
RSI 1, INC., d/b/a COLDWELL BANKER
HUNT KENNEDY WEST, AND
RSI 2, INC., d/b/a COLDWELL BANKER
HUNT KENNEDY EAST,

                Petitioners,

-against-

COLDWELL BANKER REAL ESTATE
CORPORATION f/k/a
COLDWELL BANKER RESIDENTIAL
AFFILIATES, INC.,

                Respondent.
-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/05

05 Civ. 6291 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

       The petitioners entered into a franchise agreement with respondent Coldwell Banker Real Estate Corporation ("CBRE") dated February 14, 1996 (the "Franchise Agreement").[1] The Franchise Agreement has a rather elaborate dispute resolution mechanism which first requires notice of a dispute, a period of negotiation, followed by the grant of the option for either party to institute formal mediation to be conducted by a mediator appointed by the Center for Public Resources. Thereafter, a dispute, if it is to be resolved, must be submitted under the commercial arbitration rules of the American Arbitration Association ("AAA").

---

[1] RealShare International, Inc., sometimes referred to in the Franchise Agreement as "RSI, Inc.", is the signator to the Franchise Agreement. RSI 1, Inc. d/b/a Coldwell Banker Hunt Kennedy West and RS2, Inc. d/b/a Coldwell Banker Hunt Kennedy East are wholly owned subsidiaries of RealShare International, Inc. RS2's rights arise under a separate franchise agreement. Collectively, I will refer to them as "petitioners", "Coldwell Banker Hunt Kennedy" or "CBHK".

Here, petitioners commenced an arbitration proceeding against CBRE on September 14, 2004. CBRE did not dispute the arbitrability of the dispute. The AAA appointed an arbitrator and no challenge was made to the identity of the selected arbitrator, an experienced commercial litigator. Prior to the hearing, the arbitrator with the consent of the parties bifurcated the issue of liability and damages. The parties conducted depositions in advance of the hearing. The liability hearing lasted four days and ten witnesses testified. On June 29, 2005, the arbitrator issued a four-page Interim Award concluding that CBRE had breached the Franchise Agreement.

Under 9 U.S.C. § 9, "any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals or arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir.1993). The Court's role in confirming or vacating an arbitration award is "severely limited." See Ganguly v. Charles Schwab & Co., Inc., 2004 WL 213016 at *3 (S.D.N.Y. Feb. 4, 2004), aff'd, 2005 WL 1772659 (2d Cir. 2005) (summary order). Courts have viewed an interim arbitration award as having sufficient finality for a court to confirm. See, e.g., Southern Seas Navigation Ltd. of Monrovia v. Patroleos Mexicanos of Mexico City, 606 F.Supp. 692 (S.D.N.Y.1985) (Weinfeld, J.).

Respondent does not dispute the application of any of these principles, including the Court's power to confirm this interim award. Nor does it invoke the language of sections 10 or 11 of title 9. Rather, it relies on the judicial doctrine of "manifest disregard" arguing that a court may set aside an award if it finds "both that (1) the arbitrators knew of a governing legal

principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir.2000), cert. denied 531 U.S. 1075, 121 S.Ct. 770 (2001), quoting DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir.1997). Application of the "manifest disregard" doctrine requires its proponent to meet a "very stringent burden." Greenberg, 220 F.3d at 28.

Respondent's petition to vacate and opposition to confirmation argues that the arbitrator improperly construed paragraph 15.5 of the Franchise Agreement to mean that CBKH had the right to be the exclusive destination in Manhattan for all referrals from other Coldwell Banker brokers. From my review of the Arbitrator's Award, he made no such sweeping ruling.

It is not disputed that CBRE is a wholly-owned subsidiary of Coldwell Banker Corporation which, in turn, is a wholly-owned subsidiary of Cendant Corporation ("Cendant"). It is also not disputed that in or after 2002, NRT, Inc. ("NRT") became a subsidiary of Cendant and that NRT operates more than 950 real estate offices. In 2001, NRT acquired the Corcoran Group, a real estate brokerage firm operating in the residential market in the City of New York, including Manhattan. Respondent concedes that the Corcoran Group is a competitor of CBHK.

CBRE and CBHT agreed to an addendum to the Franchise Agreement in view of the unique nature of the Manhattan market. In section 15.5, incorporated into the Franchise Agreement by the addendum, the parties agreed as follows:

> Franchisor hereby represents and warrants to Franchisee that neither Franchisor nor any of its Related Parties shall open or operate, or license any other Person to open or operate, any office engaged primarily in a residential real estate brokerage business using the Coldwell Banker Marks within the Territory during the original ten year Term of this Agreement, provided, however, that Franchisee

also acknowledges and agrees that this exclusive protection is subject to the following additional limitations and conditions subsequent. . . .

The Franchise Agreement further provides that the franchisor and "Related Parties" may operate or license the operation of an office outside of Manhattan for residential real estate brokerage even if it uses the licensed marks within Manhattan.[2] It further does not preclude the franchisor or related parties from operating a commercial or industrial real estate business in Manhattan using the Coldwell Banker marks.

CBHK claimed that CBRE promoted the Corcoran Group for real estate brokerage in Manhattan. This, it argued, was a breach of the Franchise Agreement because, among other reasons, the Corcoran Group and CBRE are both indirectly owned and controlled by a common parent corporation, Cendant.

Respondent's contrary characterizations notwithstanding, the Arbitrator's Award was not premised solely on a generalized finding that CBRE had promoted, directly or through corporate affiliates, the business of a head-to head competitor. Rather, the Award found that CBRE had permitted and sanctioned the use of Coldwell Banker's marks in Manhattan in connection with real estate brokerage:

> "Since NRT acquired control of Corcoran, NRT and Corcoran have been operating an office in Manhattan engaged primarily in a real estate brokerage using CB Marks intentionally and systematically, albeit in a manner designed to avoid or minimize detection by Claimants." (Award at 2)

The Arbitrator noted that CBRE franchisees outside of Manhattan were free to refer listings and clients to any broker in Manhattan and were not required to refer them to CBHK. The Arbitrator saw and heard the witnesses. He developed an understanding of the

---

[2] A "Related Party" is defined in ¶ 3.1(i) as "a Person who, directly or indirectly, owns or controls a party to this Agreement, is owned or controlled by a party to this Agreement, or is under common control with a party to this Agreement."

nature and purpose of the Franchise Agreement. It was not a manifest disregard of the law to conclude that it was a breach of the agreement for a party to the contract, by and through its corporate affiliate, to substantially undercut the economic value of the exclusive grant in the contract. California law controls (Franchise Agreement ¶ 16.8) and holds that "[t]here is an implied covenant of good faith an fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Johansen v. California State Auto. Assn. Inter-Ins. Bureau, 15 Cal.3d 9, 15, 538 P.2d 744, 747 (1975), citing Comunale v. Traders & General Insur. Co., 50 Cal.2d 654, 658, 328 P.2d 198 (1958).

The Arbitrator has narrowly crafted his Award to permit, in the second phase, an award of damages in two circumstances: (1) directions by a CBRE affiliate, i.e. NRT, that Manhattan residential referrals be sent to the Corcoran Group and implicitly not to CBHK; and (2) the use by the Corcoran Group of Coldwell Banker marks and logo.[3]

As the Second Circuit noted in Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004), "Our cases demonstrate that we have used the manifest disregard of law doctrine to vacate arbitral awards only in the most egregious instances of misapplication of legal principles." The respondents have not satisfied their "very stringent burden," Greenberg, 220 F.3d at 28, needed to show "manifest disregard" of the law.

---

[3] I assume that the arbitrator means that such use is a breach only in connection with Manhattan real estate brokerage. Of course, the damage phase has not transpired and there will be ample opportunity to develop the record on this.

Petitioners' motion is GRANTED, respondents' motion to vacate is DENIED and the Interim Award is CONFIRMED. The Clerk is directed to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 22, 2005